736 A.2d 573

**PHILADELPHIA FRATERNAL ORDER OF CORRECTIONAL OFFICERS, Lorenzo North, Barbara Sturgis, Preston Corley, Melvin Carr, Cheryl Glenn, Dominique Mackey, David Weaver, William Dougherty, Appellants,**

v.

**Edward G. RENDELL, City of Philadelphia, Tom Ridge, Commonwealth of Pennsylvania, L. Dennis Martire, John Markle, Jr. and Edward Feehan, PLRB, Appellees.**

**AFSCME District Council 33, Intervenor.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1998.

Decided July 23, 1999.

230

Bernard N. Katz, Michael N. Katz, Steven David Masters, Philadelphia, for Phil–FOCO, et al.

James Crawford, John B. Neurohr, Harrisburg, for PLRB.

Mark J. Foley, Anne Barden, Philadelphia, for City of Philadelphia.

Samuel L. Spear, Philadelphia, for AFSCME District Council 33.

John O.J. Shellenberger, Philadelphia, for Commonwealth of Pennsylvania.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

Appellants challenge the constitutionality of a City of Philadelphia ordinance which authorizes the City to recognize only intervenor AFSCME District Council 33 as the exclusive collective bargaining representative for the City's correctional officers. This Court granted review to determine if the municipal ordinance violates appellants' rights either to free speech and association or equal protection under the Pennsylvania Constitution, and if appellants' claims against appellees, the Mayor and the City of Philadelphia, are barred by the doctrine of res judicata. Because we find that the ordinance passes constitutional scrutiny, we affirm the decision of the Commonwealth Court.

On April 4, 1961, the City Council of Philadelphia enacted an ordinance signed by then-mayor Richardson Dilworth establishing AFSCME District Council 33 as the exclusive bargaining agent for the City's civil service employees. Appellant correctional officers are civil service employees of the City of Philadelphia. On July 23, 1970, the Pennsylvania Public Employe Act (PERA)[1] was enacted into law. Section 603 of PERA[2] provides that a group of public employees who desire to remove a union as their collective bargaining representative may file a rival representation petition with the Pennsylvania Labor Relations Board (PLRB). If an election conducted as a result of the rival representation petition results in the election of a new collective bargaining representative, the new representative then has the authority to bargain on behalf of

1. 43 P.S. § 1101.101 et seq.
2. 43 P.S. § 1101.603.

the union members. Section 2003 of PERA,[3] however, contains a savings clause applicable to the 1961 ordinance:

> Present provisions of an ordinance of the City of Philadelphia approved April 4, 1961 entitled "An ordinance to authorize the Mayor to enter into an agreement with District Council 33, American Federation of State, County and Municipal Employees, AFL–CIO, Philadelphia and vicinity regarding its representation of certain City Employees," which are inconsistent with the provisions of this act shall remain in full force and effect so long as the present provisions of that ordinance are valid and operative.

On April 27, 1992, in the correctional officers' first attempt to change union representation, the Philadelphia Correctional Officers Association (PCOA), an unincorporated employee organization distinct from appellant Philadelphia Fraternal Order of Correctional Officers (PFOCO), filed a rival representation petition with the PLRB seeking to become the exclusive bargaining representative for the City correctional officers. The PLRB dismissed the petition on the ground that it lacked jurisdiction to conduct a representation election because the employees involved were covered by the 1961 Philadelphia ordinance. The trial court and the Commonwealth Court affirmed the PLRB's decision, and this Court denied allocatur. *Philadelphia Correctional Officers Ass'n v. PLRB*, 667 A.2d 459 (Pa.Commw.1995), *appeal denied,* 544 Pa. 639, 675 A.2d 1254 (1996).

The correctional officers continued to be dissatisfied with the level of representation by District Council 33 and, in 1995, formed appellant PFOCO. Within a short period of time, PFOCO had the support of a majority of the rank and file correctional officers. On April 29, 1996, PFOCO filed a petition for a representation election with the PLRB. On May 3, 1996, the Secretary of the PLRB declined to act on the petition stating again that it lacked jurisdiction because the subject employees were covered by the 1961 ordinance. PFOCO filed exceptions arguing that the PLRB's interpretation of

3. 43 P.S. § 1101.2003.

PERA and the ordinance violated the correctional employees' right of association and equal protection under the United States and Pennsylvania constitutions.[4] On October 8, 1996, the PLRB, relying on the decision of the federal district court, dismissed PFOCO's exceptions thereby rendering final the Secretary's decision not to act on PFOCO's petition.

On November 7, 1996, appellants filed a complaint against appellees in the Commonwealth Court, invoking that court's original jurisdiction.[5] Appellants alleged in their complaint that the 1961 ordinance, as saved by section 2003 of PERA, unconstitutionally infringed upon their rights of association and equal protection under the Pennsylvania Constitution, and appellees filed preliminary objections. The City of Philadelphia and Rendell claimed in their preliminary objections that the doctrine of res judicata barred appellants' only claim against the City appellees—that the 1961 ordinance violated their free association rights under the Pennsylvania Constitution. The remaining appellees, all of whom are Commonwealth parties (Commonwealth), filed preliminary objections in the nature of a demurrer asserting that appellants failed to state a cause of action upon which relief can be granted

4. On March 8, 1996, appellants filed an action against appellees in the United States District Court for the Eastern District of Pennsylvania seeking to have the 1961 ordinance declared unconstitutional on the grounds that it violated appellants' free speech and equal protection rights under the United States Constitution and their equal protection rights under Article I, Sections 1 and 26 of the Pennsylvania Constitution. On May 31, 1996, the federal district court rejected the state and federal equal protection claims against all appellees finding that there was no constitutionally guaranteed right to collective bargaining. On August 14, 1996, the federal district court amended its decision holding that the Eleventh Amendment to the United States Constitution prohibited it from deciding state constitutional questions against the Commonwealth of Pennsylvania and the PLRB once the federal constitutional claims were dismissed, but the court confirmed its dismissal of the state and federal claims against the City of Philadelphia and Rendell. The Third Circuit affirmed. *Philadelphia Fraternal Order of Correctional Officers v. Rendell*, 1996 WL 296538, 1996 U.S. Dist. LEXIS 7621 (E.D. Pa. June 4, 1996), *aff'd* 1997 U.S.App. LEXIS 33407 (3d Cir. Oct. 21, 1997).

5. 42 Pa.C.S. § 761 provides the Commonwealth Court with original jurisdiction of civil actions against the Commonwealth government, including any officer thereof, acting in his official capacity.

because the 1961 ordinance does not violate appellants' state constitutional rights to free speech, free association, and equal protection. In addition, intervenor District Council 33 filed a motion for summary relief seeking dismissal of the action. The Commonwealth Court sustained all of the preliminary objections and granted District Council 33's motion for summary relief. Thus, before us are the issues of whether the 1961 ordinance unconstitutionally infringes upon appellants' rights of free speech, free association and equal protection and whether the doctrine of res judicata bars appellants' action against the City.

Appellants first claim that the 1961 ordinance, as saved by section 2003 of PERA, violates their rights to association and free speech as guaranteed by Article I, Sections 7 and 20 of the Pennsylvania Constitution. Article I, Section 7 provides:

[T]he printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the rights thereof. The free communication of thought and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

Article I, Section 20 provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrate."

Appellees counter that there is no constitutionally protected right to bargain collectively, and that any rights an employee may have to bargain collectively are statutorily granted.[6] The United States Supreme Court has held that the First Amendment[7] to the Constitution does not confer on public employees

---

6. See, e.g., 24 P.S. § 11–1112–A (requires employers in the public school system to meet and discuss matters affecting wages, hours and terms and conditions of employment); 43 P.S. § 217.1 (right of policemen and firemen to bargain collectively); 43 P.S. § 1101.603 (right of public employees to choose their collective bargaining representative).

7. The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or

the right to be represented by a union for purposes of collective bargaining. In *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), agricultural workers in Arizona claimed that the state's statutory election procedures pertaining to unions violated their liberty to join or sustain a labor union, to express collectively a position to an agricultural employer and to create or elect an organization entitled to invoke Arizona's statutory provision requiring an employer to bargain collectively with the certified representative of his employees thereby infringing upon their First Amendment rights. The U.S. Supreme Court held: "Accepting that the Constitution guarantees workers the right individually or collectively to voice their views to their employers, the Constitution does not afford such employees the right to compel employers to engage in a dialogue or even to listen." *Id.* at 313, 99 S.Ct. 2301 (citations omitted).

Similarly, in *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979), public employees complained that the Arkansas State Highway Department refused to accept employee grievances from the union representing the employees, but instead would accept grievances only directly from the employees. The union argued that this procedure denied the union the ability to submit effective grievances on behalf of its member employees and therefore violated the First Amendment. The U.S. Supreme Court stated:

> The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances. And it protects the right of associations to engage in advocacy on behalf of their members. The government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy, or by impos-

abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

ing sanctions for the expression of particular views it opposes.

*   *   *   *   *   *

The First Amendment right to associate and advocate "provides no guarantee that a speech will persuade or that advocacy will be effective." [Hanover Township Federation of Teachers v. Hanover Community School Corp., 457 F.2d 456, 461 (1972) ]. The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so. But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it. (citations and footnote omitted)

*Id.* at 464–65, 99 S.Ct. 1826.

■ Even though appellants couch their claim as one focusing on the right to association, appellees argue that the appellants' claim actually concerns the right to compel the City to engage in collective bargaining with the union of appellants' choice. Appellants claim that the reasoning employed by the Commonwealth Court is flawed because it is premised on the faulty notion that their claim is based on the right to compel their public employer to bargain with PFOCO. Instead, appellants raise the issue of whether it is constitutionally permissible for a public employer to force its employees to be represented by a union chosen solely by the public employer and against the will of the employees. Appellants argue that any freedom of association they have in regard to PFOCO is merely illusory because PFOCO is prohibited by the 1961 ordinance from performing any of the customary functions of a union.

■ The United States Supreme Court has rejected arguments that the First Amendment compels an employer to bargain with a specified union. We agree with the United States Supreme Court that there is no constitutional right to compel a public employer to bargain collectively with a union chosen by the employees. Appellants have not been prohibit-

ed from forming PFOCO nor have they suffered any retaliation from the City or the Commonwealth for forming a rival union and expressing dissatisfaction with AFSCME. As stated by the United States Supreme Court in *Babbitt* and *Smith*, freedom of speech does not include the right to force another to listen, and we can glean no similar compulsion based upon the Constitution of Pennsylvania. Thus, contrary to their argument, appellants' rights to free speech and association under the Pennsylvania Constitution are not infringed by the 1961 ordinance, and we decline to interpret Article I, Section 7 and Article I, Section 20 as providing public employees with a mechanism whereby they can force an employer to bargain with the union chosen by the employees.

■ Next appellants claim that the 1961 ordinance violates their equal protection rights as guaranteed by Article I, Section 1 and Article I, Section 26 of the Pennsylvania Constitution. Article I, Section 1 states: "[A]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are enjoying and defending life and liberty, of acquiring, processing and protecting property and reputation, and of pursuing their own happiness." Article I, Section 26 provides: "[N]either the Commonwealth nor any political subdivision thereof shall deny any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." We have concluded that the 1961 ordinance does not violate the fundamental constitutional rights of free speech and association. In addition, the 1961 ordinance does not involve a suspect class such as race or gender, nor do appellants claim to belong to a protected class for purposes of equal protection analysis. Therefore, this Court must apply the rational basis test under which the 1961 ordinance is constitutional if it is directed at a legitimate government interest and is not arbitrary or unreasonable. *Love v. Borough of Stroudsburg*, 528 Pa. 320, 325–26, 597 A.2d 1137, 1139–40 (1991).

■ The preamble to the 1961 ordinance states that the purposes of the ordinance are reduction of administrative

costs, stabilization of the employer/employee relationship, uniformity in personnel administration and consistency in the treatment of employees. These are legitimate government interests, and the ordinance is a reasonable means of accomplishing these interests. Because we believe that the ordinance is not arbitrary or unreasonable and is designed to meet legitimate government interests, we hold that the ordinance does not violate the equal protection provisions of the Pennsylvania Constitution.

Appellants' final claim is that the Commonwealth Court erred in finding that the constitutional claims against the City of Philadelphia and Mayor Rendell were barred by the doctrine of res judicata. Having determined that appellants' constitutional claims are without merit, we need not determine if appellants' claims are barred because the claims fail on the merits.

Accordingly, the decision of the Commonwealth Court is affirmed.